## JOLLIFFE v. MILLER.

(Supreme Court, Appellate Division, First Department. June 12, 1908.)

LANDLORD AND TENANT—INJURIES TO TENANT IN USE OF PREMISES—NEGLIGENCE ON PART OF LANDLORD—CONTRIBUTORY NEGLIGENCE.

Plaintiff, defendant's tenant of an office in a building furnished with a passenger elevator for the use of tenants, which was in charge of an elevator boy, defendant's servant, entered the building and proceeded toward the elevator, the door thereto being open and the boy standing near, and, after speaking with the boy, stepped through the door, and, the car not being in position, fell down the shaft, and received serious injuries. In an action therefor, he testified that the door was open, as it had been when used by him twice that morning; that in the two years he had been there he had never seen the door open when the car was not there, and that it was always open when the boy was on duty, when he stood there: that if the car had been there at the time he was hurt, and he had looked before stepping in, he could have seen it; that he did not look, but assumed the car was there and stepped in. Defendant's evidence tended to show that the car had been left in position by the elevator boy, and while he, standing near, was answering inquiries in regard to a tenant, the night watchman of the building, in defendant's employ, but then off duty, coming from a side entrance behind the boy, had moved the car to an upper floor. The court charged the jury that, if they should find that the proximate cause of the accident was the negligence of the watchman, they must find for defendant; that it was not negligence of the elevator boy to open the door, leave the door, and leave it open while the car was at the landing; and that if the exercise of ordinary care by plaintiff would have disclosed to him, before he stepped in, that the car was not there, he could not recover. The jury found a verdict for plaintiff. *Held*, that the judgment thereon should be affirmed.

Ingraham and Laughlin, JJ., dissenting.

Appeal from Trial Term.

Action by Charles C. Jolliffe against John L. Miller for injuries sustained by falling down an elevator shaft. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGH-TON, and SCOTT, JJ.

Wilson B. Brice, for appellant.

Jacob G. Lazarus (Sumner B. Stiles, of counsel, and Francis L. Wellman, on the brief), for respondent.

CLARKE, J.  The plaintiff's evidence tended to establish that he had been for nearly two years a tenant of the defendant in his office building, situated on the southwest corner of Sixty-Fifth street and Broadway, in the city of New York; that there were two entrances to the building, one from Sixty-Fifth street and the other from Broadway; that it was furnished with a passenger elevator for the use of tenants, in charge of defendant's servant, an elevator boy; that on the morning of October 11, 1904, the plaintiff had prior to the accident twice used the elevator; that at about 11 o'clock in the morning he entered the building from Broadway, and proceeded along the hall towards the elevator; that the elevator boy was standing near the elevator, the door of which was open; that plaintiff asked the boy whether an expressman with whom plaintiff had an appointment had gone up to his office; that the boy replied that he had not noticed him; that plaintiff then stepped through the open door, and, the elevator not being in position, fell down the shaft and received the serious injuries of which he complains.  The plaintiff testified that the door of the elevator was open, as it always had been and it had been that morning; that in the two years he had been there he had never seen the door open when the elevator was not there; that it was always open when the boy was on duty, when he stood there; that if the car had been there at the time he was hurt and he had looked before he stepped in, with the condition of light as it was, he would have been able to see the car; that he thought the car was there; that he did not look to see before he stepped; that, when he saw the open doorway, he assumed the car was there and stepped in, thinking he would get in just as he had been in the habit of doing.  The defendant gave evidence tending to show that the elevator was in good condition, and had not changed its position by reason of any defect in its machinery; that the elevator boy had left it in position and stepped outside in the hall, leaving the door open; that, while standing in the immediate vicinity, a woman had asked him some questions in regard to a tenant of the building; that while attending to her one Holden, who was night watchman and who was then off duty, and had been out for his breakfast, returned through the Sixty-Fifth street entrance.  Holden had a room on an upper floor which he hired from a tenant.  Desiring to go up to his room, he stepped into the car behind the boy's back, and, without saying anything and without closing the outside door, he started the car upwards.  It was a noiseless electric elevator.  While it was so ascending and before it reached the fourth floor, the plaintiff stepped past the boy, and fell down the shaft, the boy following so closely after that he only saved himself by catching the side of the door.  The boy shouted to Hol-

den not to send the elevator down, as an accident had happened, and hastened to the relief of the plaintiff.

The learned court charged the jury that:

"No act of Holden's can make the defendant responsible. That, if the jury find that the proximate cause of the accident was the negligence of Holden, they must find a verdict for the defendant."

He also charged:

"It was not negligence on the part of the elevator boy to open the door, leave the door, and leave it open while the car was at the landing.

"Defendant's Counsel: I ask your honor to charge that if with proper care the plaintiff would have seen that the car was not there, they will find for the defendant.

"The Court: I charge that; that is, if the exercise of ordinary care would have disclosed to him before he stepped in that the car was not there, he cannot recover."

It would thus seem to be the law of the case, as charged by the learned court, that the defendant was in no respect responsible for Holden's act, and that, if Holden's act was the proximate cause of the accident, the plaintiff cannot recover, and that it was not negligence on the part of the elevator boy to open the door, leave the door, and leave it open while the car was at the landing, and that, if with proper care the plaintiff would have seen that the car was not there, they should find for the defendant. This being the law of the case, and the plaintiff having testified that if the car had been there and he had looked before he stepped in, with the condition of the light as it was, he would have been able to see it, and that he did not look to see, and that he had simply assumed that the car was there and stepped in—it would seem that it would be difficult to sustain a verdict based upon the proposition that the plaintiff's negligence did not in the slightest degree contribute to the accident. Not only would it seem that the plaintiff failed to sustain the burden of proof of contributory negligence, but that he positively established his contributory negligence. The only possible way to escape this conclusion is that the open door and the elevator boy standing by it together constituted on the part of the defendant such an invitation to enter and such a representation of safety that plaintiff was relieved from all responsibility of taking care of himself; that he was lulled into security; and that, under the circumstances, the defendant became a guarantor of the safe condition of the premises and an insurer against accident. In the second place, there would seem to be grave doubts as to the negligence of the defendant. It was conceded, and it was so charged, that it was not negligence on the part of the elevator boy, having brought his elevator to the floor, to open the door, to leave it open while the elevator was at the floor level and while he was standing there. There is no question in the case of anything being out of order in the elevator, that it started up by itself, that any condition for which defendant was responsible caused its removal, and thereby constituted the dangerous situation. Here is a boy in the performance of his duty leaving the conditions safe, standing by his door, answering the inquiries of a person who had a right to make them, and which he was answering in the per-

formance of his duty, and, without his knowledge and behind his back, a person for whose actions the tenant is not responsible appropriates the elevator for his own use, and causes the conditions, without which the accident could not have happened.  It may be argued that there was the intervention of a third party for which neither the elevator boy nor his master, the owner of the building, was responsible; that the act of taking the elevator upstairs and leaving the door open on doing so was the proximate and only cause of the accident; and therefore it was Holden's act in changing a safe situation to a dangerous one, without right as a pure interloper and trespasser, and without the knowledge of the elevator boy which permitted the accident, and for his act the defendant was not responsible, as charged.  If this were a new question, it would seem to me that it would be carrying the doctrine of responsibility beyond reason to hold the defendant liable for such an extraneous interference with a safe situation by a person for whom he was not responsible.  I think, however, that we are governed by controlling adjudications.

In Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655, the defendant owned an apartment house.  The plaintiff's husband had a lease upon an apartment therein.  It contained an elevator.  The door through which the car was entered was so constructed and fastened that it could be opened by persons standing in the hallway.  Between 6 and 7 in the afternoon of May 7th the plaintiff, accompanied by a lady, entered the hallway from the street, walked towards the elevator, and, as she approached it, the door was thrown open.  She passed through, and the car being above, she fell to the bottom of the shaft.  It was conceded at the trial that there was no artificial light in the hallway, but whether it was then so dark as to require a light was a disputed fact; that upon the occasion in question the door of the elevator shaft was opened from the hallway by a boy who was a younger brother of the person employed by the defendant to run the elevator.  Witnesses called by the plaintiff testified that this boy, young Reilly, had run the elevator on many occasions before the accident, while the witnesses called by the defendant testified that he had never run it.  The defendant insisted that the plaintiff contributed to the accident by failing to observe that the car was not in place, and moved at the close of the plaintiff's case to dismiss upon the ground that no negligence had been shown that was attributive to the defendant or to any of his employés, and, when both parties rested, asked the court to direct a verdict upon a ground above stated, and upon the further ground that young Reilly was not in the defendant's employ, and that plaintiff was guilty of contributory negligence in not looking before she went through the door.  Both motions were denied, and defendant excepted.  The court said:

"In this there was no error.  The defendant assumed to operate the elevator for the benefit of his tenants, and he was required to exercise due care for their safety, and was liable to his tenants for the negligence of employés in operating the elevator.  The evidence was sufficient to sustain the finding that young Reilly had run the elevator on so many occasions that the plaintiff was justified in assuming that he was employed by the defendant in that

service, and also to sustain the finding that this practice of young Reilly was known, or should have been known, to the defendant's son, who had the general supervision of the building and to the engineer employed in and who superintended the building and the running of the elevator with power to employ attendants. For their neglect the defendant is liable. * * * The door to the car into the elevator being thrown open by a boy who had been accustomed to throw it open, it was not as a matter of law contributory negligence in the plaintiff to pass through the door without stopping to look and listen. An elevator for the carriage of persons is not like a railroad crossing at a highway, supposed to be a place of danger, to be approached with great caution, but, on the contrary, it may be assumed, when the door is thrown open by an assistant, to be a place which may be safely entered without stopping to look, listen or make a special examination. The court instructed the jury that there was no evidence that young Reilly was employed by the defendant, and then said: 'But, though he was not such a servant, it may be a question for you whether the defendant should not have exercised such supervision over the building as to make it impossible for that brother to do acts from which the tenants might have derived the impression that he was such a servant.' To this the defendant excepted. The court did not go beyond the law in directing the jury to determine as a question of fact whether the defendant should not have exercised sufficient supervision over his building to have prevented this young and unauthorized boy from acting as and creating the impression that he in fact was an attendant at the elevator."

In Wilcox v. City of Rochester, 190 N. Y. 137, 82 N. E. 1119, the plaintiff was injured by falling to the bottom of the elevator well through an open door in the elevator shaft. He was a journeyman sheet metal worker in the service of a firm of contractors who were employed to repair the roof of the police station. He had been working upon the roof on the day before the accident, and had been in the elevator two or three times that day, when the elevator was operated by Smith, an assistant engineer in the employ of the city. On the morning in question the plaintiff arrived at the police station to go to work on the roof. As he entered the front doors of the building, he met Smith, whom he recognized as the man who had been running the elevator when he went up and down. Smith was coming from the elevator; the door to the elevator being open. The plaintiff and a fellow workmen, evidently acting under the impression that the elevator was in a position to be entered with safety through the open door, proceeded toward the door. The plaintiff stepped through, and, in consequence of the elevator having meantime been moved upward and away from the door by a police telegraph operator, the plaintiff fell into the shaft and down to the bottom. Smith contradicts the plaintiff so far as the position of the door is concerned, saying, first, that it was shut, but not locked, and, then, that it was partly open and that he saw the plaintiff push the door back; but the court said the jury were at liberty to accept the testimony of the plaintiff on this point as in accordance with the fact. Smith's testimony, however, showed that the plaintiff was justified when he met Smith in inferring that he had just come down in the elevator and had left the door in the position in which the plaintiff actually found it, whatever that may have been, for Smith testifies that he had been on the elevator prior to meeting the plaintiff; that he left it just with the door half way open; that, when he met the plaintiff and his companion, he supposed that they wanted to go up in the elevator, and that he himself thought the ele-

vator was still there, and had not noticed that it had been removed. Said Willard Bartlett, J.:

"Under these circumstances, the trial court and the Appellate Division were not only justified in holding that the alleged contributory negligence was a question for the jury, but they were required so to hold by authority very precisely applicable to the facts of the case at bar. Tousey v. Roberts, 114 N. Y., 312, 21 N. E. 399, 11 Am. St. Rep. 655."

The learned judge, however, held that the judgment should be reversed and a new trial granted under the doctrine of the Maximilian Case, 62 N. Y. 160, 20 Am. Rep. 468, that the city was not responsible for the acts of police officers in a police building.   Haight, J., said:

"If the door was open, then it was a question for the jury to determine from the evidence as to whether he used such care and caution as a reasonably prudent and cautious person would have used under the same circumstances in entering or attempting to enter the elevator well without looking to determine whether the car was there or not.   The jury having found a verdict in favor of the plaintiff, we must assume that it found that the door of the elevator shaft was open, and that that issue is disposed of in favor of the plaintiff.   The negligence of the defendant's employé thus being established, the only other question that remains is as to whether the plaintiff was guilty of contributory negligence.   That question was also submitted to the jury, and the finding was in his favor.   I am of the opinion that, under the circumstances disclosed by his testimony and that of his associate, we cannot say as a matter of law that he was guilty of contributory negligence, or that there was no evidence to sustain the verdict.   Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655."

While the judgment was reversed upon the ground that the city was not responsible under the doctrine of the Maximilian Case, a majority of the court seem to have held that upon the facts presented the Tousey Case was controlling, and that the trial court and the Appellate Division were not only justified in holding that the alleged contributory negligence was a question for the jury, but they were required so to hold.

In Morman v. Rochester Machine Screw Company, 53 App. Div. 497, 65 N. Y. Supp. 967, an employé volunteered to show the plaintiff the elevator.   She followed him to the end of the hall.   Smith, the employé, upon reaching the elevator, opened the door and stepped back, and turned towards the plaintiff, and waited, she then, without looking to see if the car was there, stepped through the door, and fell to the bottom of the well.   The court said:

"It is not to be denied that the plaintiff, even taking her own version of the occurrence, did not appear to take much thought for her own safety when she accepted Smith's invitation to enter the elevator, and it may be that a jury will so find when the question is submitted to them; but accepting her evidence as truthful and trustworthy, how can we say as matter of law that Smith did not, by implication, assure her that the elevator car was ready for her, or that she was not justified in acting upon such assurance without first looking to see whether or not she might do so without encountering any danger."

From the cases in the Court of Appeals cited, supra, I think we may deduce these two propositions:   From the Tousey Case that the open door and the elevator boy standing by it was an invitation to the plain-

tiff to enter with the right upon his part to assume that the car was there. From the Wilcox Case that, if Holden had been an employé of the defendant engaged at the time in the defendant's business, his act in removing the elevator could be chargeable to the defendant, and from both cases that, under the circumstances disclosed on this record, it was the duty of the trial court to leave the question of contributory negligence to the jury.

The judgment and order appealed from should be affirmed, with costs.

HOUGHTON, J., concurs.  SCOTT, J., concurs in result.

INGRAHAM, J. (dissenting).  I do not think that the evidence justified a finding that the defendant was negligent or the plaintiff free from contributory negligence.  The elevator boy was in charge of the elevator, came down with it, and it was then standing waiting for those wishing to use it.  He stood a short distance in front of the elevator door, and certainly could not anticipate that any one would get in behind him and take the elevator to an upper story without notice to him or without shutting the elevator door.  He turned to answer an inquiry as to a tenant in the building, and while thus engaged a person for whose acts the defendant was not responsible, without authority from the defendant or his employés, took the elevator to an upper story without shutting the door.  Immediately thereafter the plaintiff also walked behind the elevator boy, and walked through the elevator door without looking to see whether the elevator was there.  If the elevator boy was negligent in not anticipating that some one could get behind him and remove the elevator, the plaintiff was guilty of negligence in walking through this elevator door without making any examination or looking to see if the elevator was there.  The plaintiff was a tenant in the building and in the constant habit of using the elevator; knew that this elevator boy was in charge of the elevator, and that the elevator boy was then engaged in answering this inquiry.  I do not think the elevator boy was negligent in allowing his attention to be distracted for a moment to answer a question in respect to a tenant in the building, or responsible for the fact that the elevator was removed without his knowledge; but, if he was negligent, it seems to me that the plaintiff was clearly guilty of contributory negligence.

The cases relied on in the prevailing opinion seem to me clearly distinguishable.  In Tousey v. Roberts, 114 N. Y. 314, 21 N. E. 399, 11 Am. St. Rep. 655, it was dark in the hallway, and there was no artificial light, and the liability of the defendant was based upon the fact that the jury were justified in inferring that the hallway and the elevator should have been lighted.  In Wilcox v. City of Rochester, 190 N. Y. 137, 82 N. E. 1119, the elevator man opened the elevator door and then walked away from the elevator leaving it unguarded, when another employé of the owner, for whose acts the defendant was responsible, removed the elevator without closing the door.  Here the boy in charge of the elevator was at his post close to the elevator door.  There was plenty of light to see the elevator, and, if the plaintiff had

looked or taken the slightest precaution, he would have discovered the fact that there was no elevator there.

I think, therefore, the judgment should be reversed.

LAUGHLIN, J. (dissenting). The facts in the case at bar differ somewhat from those in the cases cited in the prevailing opinion. An extreme doctrine is laid down in those cases which should not be extended. I think that we would be justified in distinguishing the authorities cited, and in holding that plaintiff was guilty of contributory negligence as matter of law. But, if we would not, we are justified in holding that the verdict in favor of plaintiff on that point is against the weight of evidence; and, since it has not been held on such facts that plaintiff is free from negligence as matter of law, I vote to reverse on the ground that the verdict, in so far as the jury found that plaintiff was free from contributory negligence, is against the weight of the evidence.