authority for this action, nor, in my judgment, can it be supported by principle. The argument of the plaintiff seems to proceed upon the theory that the covenant is a cloud upon title, and therefore may be removed by a court of equity. A covenant may be an incumbrance, and courts of equity have power to remove adverse titles and incumbrances which affect title; but the essential condition to the exercise of jurisdiction in such cases is, and always has been, that the outstanding title or incumbrance, although in form valid, must as matter of fact be invalid.

I am not prepared to assent to the proposition that a covenant running with the land, which is wrought into the very deed by which the plaintiff claims title, can be said to be an incumbrance which is invalid and which a court of equity should interfere to remove. The majority of the court appear to be of the opinion that authority is to be found for this action in what was decided by Chancellor Kent in Hamilton v. Cummings, 1 Johns. Ch. 517. That case merely decided that the court had power to order a bond or other instrument to be delivered up to be canceled, whether the instrument is or is not void at law, or whether it be void on the face of it or by matters shown by proofs in the case. But the court did not decide, and it has never been decided, that a court of equity could strike out from a valid instrument a covenant or a condition which by the express agreement of the parties was made a part of their contract. The question does not arise now with reference to a court of equity enforcing this covenant. It is true that the cases ordinarily relating to restrictive covenants are those arising in connection with the interests of neighborhood property owners, and this is a simple case of one religious corporation making a deed of property to another religious corporation with the intent and object of having the property conveyed used only for religious purposes; but I am unable to see why such a covenant could be destroyed by a court of equity simply because of inconvenience to the grantee, who desires to avoid the effect of that covenant in order that the property may be made more available to it commercially. Courts of equity are not constituted for the purpose of destroying covenants. They may refuse to enforce them when equitable considerations are presented such as appeared in the Thatcher Case, but covenants, provisions, and conditions of deeds are not to be expunged, and virtually a new deed made by the court, contrary to the agreement of the parties deliberately entered into, as in this case.

I therefore dissent.

LAUGHLIN, J., concurs.

---

### ENDRES v. INTERNATIONAL RY. CO.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1909.)

APPEAL AND ERROR (§ 1177*)—REVIEW—REVERSAL.

In an action for injuries to a passenger on a street car, alleged to have been caused by an electric shock received, a judgment for plaintiff will be reversed, and cause remanded for a new trial, where the right of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff to recover under the evidence is uncertain, and rulings by the court on the evidence were questionable, if not clearly erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4599; Dec. Dig. § 1177.*]

Appeal from Erie County Court.

Action by Alois Endres against the International Railway Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and WILLIAMS, KRUSE, and ROBSON, JJ.

Norton, Penney & Sears and Dana L. Spring, for appellant.
Mark P. Kerr, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. The action was brought to recover for loss of services of plaintiff's wife, who was alleged to have received personal injuries through the negligence of the defendant. She was a passenger riding in one of the defendant's cars. There was an electrical disturbance in the car, and it is claimed she received a shock, which led to the very serious consequences detailed in the evidence.

First. The defendant claims that there was no evidence upon which its negligence could be found. The accident occurred August 12, 1904. The plaintiff gave evidence as to what happened at the time of the accident, but did not attempt to show what the cause of the difficulty was, or how the defendant was negligent in respect to the electrical appliances in the car. He relied upon the rule of "res ipsa loquitur." Adams v. Union Railway Company, 80 App. Div. 136, 80 N. Y. Supp. 264. By the evidence given on the part of the defendant it appeared that the car was brought into the car barn, towards evening of the day before the accident August 11th; it being reported that the controller worked hard. The electrical repair man opened the controller box, examined the parts, and found the contacts dry. These are the parts that come together when the handle is turned around, and through which the electricity passes. He blew the dust out, and put some grease in to make it easy, and found no other trouble. He reported the car then as all right, and it was run by one motorman from 7:45 the same evening until half past 12 o'clock, when he put it in the barn. He testified the electrical appliances were all right during that time. It was sent out again on the morning of August 12th, about 5 o'clock, and was operated by a second motorman from that time until about half past 11 o'clock in the forenoon, and that motorman testified the car was all right during that time and when he turned it over to the motorman who was operating it at the time of the accident. This third motorman was not a witness. He was dead at the time of the trial. The conductor was sworn. He took the car with the third motorman referred to, and was on the car until the accident occurred, about 2 o'clock in the afternoon. The conductor testified it operated all right until the time of the accident.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

All these witnesses testified that nothing occurred while they were on the car to injure the controller, as far as they knew.   The car was taken to the shop after the accident, and the repair man examined the controller then, and testified that he found two of the fingers bent; that a set screw had worked loose, and had caused the trouble.   He said he found this screw a little loose the night before, and tightened it up.   Two electrical experts, Douglas and Potter, examined the car after the accident (before it had been interfered with, as the master mechanic swore), and they testified that the car was all right, except that the two fingers were bent and out of adjustment, and were burned and blistered, which came from the loosening of the screw, and that the standard way of fastening the fingers was by the use of screws.   The defendant, in short, claims that the accident was caused by a blowout of the controller, resulting from the loosening of the screw and bending of the fingers, so called, while the car was being operated, and that the defendant was not negligent in failing to discover the loosening of the screw, and the bending of the fingers caused thereby, before the accident, and repairing them.

The plaintiff claims, however, that the defective condition causing the accident might by the exercise of proper care and inspection have been discovered and remedied, and the accident thus prevented, and that there may have been negligence on the part of the motorman in the use of the power, which injured the controller fingers and thus caused the accident.   Upon all the evidence we are inclined to the view that the question of defendant's negligence was for the jury and not for the court.   The jury were not bound to believe all that was sworn to by defendant's witnesses, who were mostly its employés, nor to adopt the opinions expressed by defendant's experts.   There were circumstances developed by the cross-examination of the witnesses, and by evidence given in plaintiff's behalf, which the jury were entitled to consider, and from all the evidence they were to determine whether the defendant had performed its full duty to its passengers at the time of the accident, so as to relieve it from liability for injuries resulting therefrom, notwithstanding the rule of "res ipsa loquitur," and the defendant's attempt to remove the presumption arising therefrom.   Eaton v. New York Cent., etc., Co., 125 App. Div. 54, 109 N. Y. Supp. 419.

Second.   The defendant claimed that there was no evidence, or at least insufficient evidence, to authorize the finding by the jury that the plaintiff's wife received an electrical shock, and was thereby injured as seriously as plaintiff's evidence would seem to indicate.   She herself testified to the feelings she experienced at the time, and to her condition immediately after the accident, which grew worse as the time passed.   There was more or less evidence given by electrical experts as to the possibility of her receiving a shock, considering the condition of the electrical appliances in the car at the time of the accident.   There seems no doubt that the woman, from the time of the accident on, was in a serious condition and has continually grown worse.   The only question seemed to be whether this condition resulted from a shock received at the time of the accident, or from other physical infirmities to which women are subject at the time of the

change of life, as it is commonly termed. Physicians, as experts, were examined at considerable length upon this subject, and then the question was left to the jury, and we think properly so. We can hardly say their verdict was without evidence to support it, nor can we say it was contrary to or against the weight of the evidence, so as to require it to be set aside either as matter of law or of fact. As before stated, the woman's physical condition, from about the time of the accident on until this trial, was shown to be very bad, and this by many witnesses. As to the time when this began, and the apparent exciting cause, the woman testified in great detail as to her feelings on the car when the flashes of the blowout occurred, and on her way to the hospital, and then to her home; and she was corroborated as to her condition at that time by other witnesses. They could not, of course, say what her feelings were. If her evidence was wholly reliable, the jury might well find that she received an electrical shock at the time of the accident, which was the cause of all her subsequent physical troubles. Buckabee v. Third Avenue R. R. Co., 64 App. Div. 360, 72 N. Y. Supp. 217. Whether that evidence and its corroborations were overcome by the expert evidence, electrical and medical, must be regarded as a question of fact, which the plaintiff had a right to submit to the jury, and we should not disturb their finding on that question.

Third. The defendant contends that the court erroneously instructed the jury that it was chargeable with the highest degree of care that could be expected of human beings in the handling and running of the car by the motorman. The claim is that the motorman was required to use only such skill and care as an ordinarily prudent and careful man would use. Laviere Stierle v. U. Railway Co. of N. Y., 156 N. Y. 70, 50 N. E. 419, was a street railway case, the car being drawn by horses, and it was held, not that the strict rule as to the highest degree of care was inapplicable in all street railway cases, but that it was inapplicable to that case under the circumstances surrounding the accident therein. The rule as stated in that case was that the duty of the highest degree of care applied only in regard to those results which were naturally to be apprehended from unsafe roadbeds, defective machinery, imperfect care, and other conditions endangering the success of the undertaking; and the court said that the conditions there present were not such that dangerous results could be apprehended, and therefore the driver had the duty of ordinary care only. (See opinion in reargument, 156 N. Y. 684, 50 N. E. 834, and the cases there referred to.) The rule of the highest degree of care is usually applied in cases where the accident results from defective roadbed, machinery, and cars, and rarely in cases where the result follows negligent operation by the driver, engineer, or motorman. In cases where the negligence of the operator of the motive power is involved, evidently the rule in the Stierle Case should control, and whether the care should be the highest degree, or only ordinary care, would be dependent upon the question whether from the particular acts charged as negligent, under the circumstances present at the time, serious and dangerous results were liable naturally to occur.

Evidence had been given by plaintiff's expert, Billings, upon which

the jury might find the blowout was caused by the operation of the power while the car was running; that, if there was a little trouble with the fingers, the motorman could discover it, and might make it worse by the use of too much force, or he might stop the car and cut out the motor that was wrong, and thus save trouble. The motorman was not a witness—was dead at the time of the trial, as already stated. Whether he was negligent in the respects suggested above was left to the jury, among other grounds of negligence, and under the instruction that he was bound to the exercise of the highest degree of care which could be expected of human beings. The question is, therefore, whether these alleged acts of negligence under the circumstances were such that serious, dangerous results were liable naturally to occur. It may be said that a blowout of the controller was liable to result; but ordinarily would such a blowout cause serious trouble? Were such serious results as are claimed to have occurred here reasonably to be apprehended? We think not, and that the rule of ordinary care alone was applicable to the motorman in operating the car in the respects suggested. This question is not free from doubt. There are no authorities directly in point. The facts in this case, already considered, are close, also, and the right of plaintiff to recover at all troublesome, and it seems to us this particular instruction to the jury placed upon the defendant a burden which it should not have borne, especially as the motorman could not be produced as a witness, and the principle of "res ipsa loquitur" was applied in the case.

Fourth. The rulings by the court in the admission of evidence given by Dr. Schwartz and the expert witness Wende were questionable, at least, if not clearly erroneous; but, were it not for the closeness of the other questions in the case, we might overlook them.

We think there had better be a reversal, upon the law and the facts, and a new trial granted.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event. All concur; KRUSE and ROBSON, JJ., in result.

KRUSE, J. (concurring). I concur in the result, upon the ground that improper testimony was admitted. The statements of the plaintiff's witness that it was possible for a person riding in a car to get an electric shock, and that the witness himself had received such a shock, should have been excluded. While ordinarily this might not constitute prejudicial error, the case was so close upon the evidence that I think the error cannot be disregarded. I think it very doubtful that the plaintiff was injured, physically, by an electric shock. Her health was not good, and very likely she became frightened, which may have aggravated her illness. But that of itself is not a ground for liability against the railway company.

I do not, however, agree with the views of Mr. Justice WILLIAMS that the defendant was not required to use the highest degree of care in respect of its appliances for applying and using the electric power. Electricity is a force so dangerous, and the improper use of it liable to result in so serious and grave consequences, that I think the rule of the

highest degree of care applies. Leonard v. Brooklyn Heights R. R. Co., 57 App. Div. 125, 67 N. Y. Supp. 985.

ROBSON, J., concurs.