H. H. WALDRUP v. A. G. CARVER AND THE ESTATE OF H. G. McKENZIE,
    FIRST NATIONAL BANK & TRUST COMPANY, TRUSTEE.

(Filed 29 September, 1954.)

Negligence §§ 4f, 19c—Invitee held guilty of contributory negligence as
    matter of law barring recovery for fall down elevator shaft.

The plaintiff's evidence tended to show: The owner of an office building
furnished the tenants keys in order that they might enter the building at
night.  There was a light in the lobby which could be turned on by pulling
a cord hanging from the ceiling in line from the door to the elevator shaft
and stairway.  The doors to the elevator shaft on each floor locked from
the inside, and no elevator service was furnished at night.  On the first
floor there was a hole in the metal lattice of the upper portion of the door
to the elevator shaft, which condition had existed for some time.  Plaintiff
and another, while working at night, left the building for some fifteen
minutes, leaving the folding door to the elevator and the door to the
elevator shaft closed, but leaving the elevator light on.  Upon their return,
plaintiff, without turning on, or waiting for the lobby light to be turned on,
walked in the dark to the elevator shaft, unlocked the elevator shaft door
from the inside by reaching his hand through the hole in the grill work,
and, although the absence of the elevator light and elevator door gave him
notice that conditions had changed since he left the building, reached into
the shaft to switch on the elevator light, and either stepped or fell into
the elevator shaft.  Held:  The negligence, if any, on the part of the
owner in failing to repair the grill work in the elevator shaft door was
passive, while the plaintiff was guilty of active negligence proximately
causing his injury and barring recovery as a matter of law.

APPEAL by plaintiff from Sharp, Special J., March Term 1954,
BUNCOMBE.   Affirmed.

Defendants own a four-story office building, with basement, in Ashe-
ville, known as the Oates building, and maintain therein an elevator for
the convenience of their tenants during business hours.   The building is
closed, the elevator doors are locked, and the elevator operator departs at
the afternoon closing hour; but defendants furnish some, if not all, their
tenants keys to the front door of the building so they may return to their
offices at night when and if they desire.

There is a recess or very small lobby just inside the door to the first
floor so that the elevator shaft and stairway are four or five feet from the
front door.   There is a light about midway between the front door and the
elevator door and stairway.   This light is turned on by pulling a cord
hanging from the ceiling in line from the door to the elevator shaft and

stairway. Any one entering the building at night can pull the cord and turn on the light before he reaches the stairway or elevator, whichever he intends to use  There is a door to the elevator shaft on each floor which locks from the inside and, ordinarily, cannot be opened from the outside without a key. Then there is a folding door to the elevator cage. This is a part of the elevator.

On the first floor the upper portion of the door to the elevator shaft is composed of metal lattice or grill work. Someone had made a hole through this grill work so that it is possible for a person to reach through the hole, throw the safety latch, push open the folding door to the elevator cage, enter and operate the elevator in the absence of the operator and without a key with which to unlock the elevator door from the outside. There is evidence that the elevator had been in this condition for some time.

W. E. Pate, district manager of the State Capital Life Insurance Co., occupied offices on the fourth floor of the building. Plaintiff and one Penland worked for or under him. On 22 April 1952 plaintiff and Penland returned to the office about 5:30 or 6:00 p.m. to do some work. About 7:45 p.m. they left the office to get something to eat. They found the elevator at the fourth floor with the outer door open and the elevator light on. They rode down to the first floor on the elevator and closed the door but left the elevator light on. In about fifteen minutes they returned to the building, accompanied by Page. There was, at the time, no light in the lobby or in the elevator. Plaintiff walked in the dark, without stopping to turn on the light in the lobby, to the elevator, reached through the hole in the grill work, lifted the inside safety latch, opened the door, stepped in the elevator shaft, and fell to the basement. At the time Page was reaching for the light cord to turn on the light.

Plaintiff testified: "I was walking in front, Mr. Penland, and Mr. Page behind; we were all right together; there wasn't any of any kind of lights when we walked in and through the entrance-way . . . there was no elevator or hall light; it was pretty dark, so dark you couldn't see; I reached my hand through the opening that had been made 'til we could open the door, reached in to turn the light on and fell; I don't remember Mr. Page saying anything about turning the light on . . .

"The lock that locks the elevator door is on the lefthand side inside the elevator behind the door. The way one unlocked the door was by reaching my hand in through the metal grill where it had been torn and flipping the lock on the inside . . . I reached my hand through the hole in the grating and unlocked the door from the inside and then opened the door . . .

"Q  Did you step into the place where the elevator was?

"A  Well, I was reaching for the light and fell in, yes sir."

WALDRUP v. CARVER.

Page, witness for plaintiff, testified:

"To get on the elevator you had to open that door and also open the door that was on the elevator that went up and down with the elevator. Open both doors . . . I was trying to find the cord . . . Before I could reach and turn the light on, Mr. Waldrup opened the stationary door and reached in and unlocked the door, unlocked the bolt, and opened it; and just walked on in; right into the dark, must have."

Plaintiff's other companion, Penland, testified to like effect.

At the conclusion of the plaintiff's testimony in chief the court, on motion of the defendants, entered judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*Cecil C. Jackson and L. C. Stoker for plaintiff appellant.*
*Williams & Williams for defendant appellees.*

BARNHILL, C. J.  If it was the duty of defendants to repair the grill work in the upper half of the door to the elevator shaft located on the first floor of their office building, we are unable to perceive that a breach of this duty constituted one of the proximate causes of the unfortunate mishap described in the complaint.  The hole in the grill work was without capacity to cause injury to anyone.  While, perhaps, it created a continuous and continuing temptation to occupants of the building on returning to their offices at night to take the easy way rather than to climb the steps, it could do no harm to any one.  It merely constituted a passive condition.  Before it could be connected even remotely with an incident such as the one here described, it had to be knowingly and deliberately activated and put to use by the injured party.

However, we need not and do not rest decision on the question whether the state of disrepair of the grill work of the door existing over a period of time, nothing else appearing, constitutes actionable negligence.  We will leave that question open until it is brought more acutely into focus.

The rule which controls decision on a motion for a judgment of involuntary nonsuit for that it is made to appear that, as a matter of law, plaintiff was guilty of negligence which proximately contributed to his own injury has been stated and restated in our reports so frequently that it has become axiomatic.  Any further restatement or elaboration at this time would constitute needless repetition.  Suffice it to say that upon the facts appearing in this record, any reasonable mind would reach the inescapable conclusion that plaintiff's unfortunate injury resulted from his own failure to exercise ordinary care and precaution for his own safety.

When the plaintiff left the building he did not turn off the light in the elevator.  When he returned, there was no light in the elevator shaft

where it would be if the elevator was still at that floor. This alone was sufficient to put him on notice conditions had changed since he left the building. When he returned, the lobby was in a safe condition. There was no state of disrepair or latent danger calculated to cause him injury. A light was available to him. The use of the elevator by tenants at night was at most permissive. Knowing the conditions and being fully aware it was so dark he could not see, he found his way to the elevator and opened the door. Here again the existing physical conditions gave him warning of his peril. He found no elevator door which had to be opened before a passenger could enter the elevator. He then reached in the shaft without waiting for the hall light to be turned on to switch on the elevator light and either stepped or lost his balance and fell into the elevator shaft to the basement.

Thus this case comes squarely in the line of decisions represented by *Scott v. Telegraph Company,* 198 N.C. 795, 153 S.E. 413, and *McInturff v. Trust Co.,* 201 N.C. 16, 158 S.E. 547, which control decision here. Indeed the evidence of plaintiff's want of due care for his own safety is more persuasive than are the facts in either the *Scott* or the *McInturff* cases.

The mishap was unfortunate. That plaintiff has had to suffer the ill effects of his injuries is to be regretted. Yet he cannot hold these defendants to a higher degree of care for his safety than he exercised in his own behalf. The negligence, if any, of defendants was passive; that of plaintiff was active. The defendants permitted a condition to exist which made it possible for plaintiff to create the hazard which caused his injuries, but he, by his own conduct, created the hazard. He must suffer the consequences.

The judgment of the court below is
Affirmed.