**J. David Kaminsky, Plaintiff-Appellee, v. Arthur Rubloff & Company, Defendant-Appellant.**

**Gen. No. 50,640.**

First District, Fourth Division.

June 17, 1966.

■■■■■■■■

■■■■■■■■

■■■■■■■■

ENGLISH, J., dissenting.

Berchem, Schwantes & Thuma, of Chicago (Donald N. Berchem, Richard Owen Young, Michael A. Dunn and James O. Latturner, of counsel), for appellant.

Jacobs and McKenna, of Chicago (Lloyd E. Williams, Jr. and Barry L. Kroll, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff brought an action based upon negligence to recover damages for injuries which were sustained by him when he unlocked the first floor door to an elevator shaft, stepped in while the elevator was at another floor, and fell to the bottom of the shaft. A judgment in favor of the plaintiff for $15,000 was entered upon a verdict returned by the jury after which defendant filed motions for judgment notwithstanding the verdict and in the alternative for a new trial, both of which were denied. Defendant appeals from the verdict and judgment and from the denial of those motions.

On the day of the accident (December 23, 1953) plaintiff was employed as manager of the Martha-Maid Manufacturing Company, a tenant of the sixth floor of a building which was managed by defendant, located at 367 West Adams Street. Plaintiff's employer and another tenant of the building had permission to use the passenger elevators after 6:00 p. m., when the elevator cars were closed down and the elevator operators off duty. After 6:00 p. m. the elevator doors could be opened only by inserting a "key" through a hole therein, and the elevator could be at any floor when the door was opened in that manner. Shortly after 6:00 p. m. on the

aforesaid date plaintiff returned to the building of his employer following an office Christmas party to complete some work, first entering the lobby which was described as being approximately thirty feet in length and ten feet wide at the front door but narrowing to six feet in width about thirteen feet from the front door. Two passenger elevators are at the rear of the lobby. Plaintiff obtained the "key" and unlocked the door to one of the elevators without difficulty. He then opened the door but did not look through a window therein to ascertain whether the elevator was at the first floor, and simultaneously stepped in, but the elevator was at a higher floor and plaintiff fell to the bottom of the shaft.

Plaintiff testified that the normal practice in the building after 6:00 p. m. was to leave the elevator on the ground floor with the door closed and the light turned off (the light switch was inside the elevator approximately thirty inches from the edge of the elevator door); that on prior occasions when the elevator was in this position the indicator light above the elevator would be unlit; that he had used the elevator five times per week after 6:00 p. m. since 1949; and that whenever he opened the elevator door in the aforesaid manner he always found the elevator to be at the lobby floor. The plaintiff further stated that on the night of the accident the elevator indicator light was unlit as usual and that he relied thereupon for assurance that the elevator was on the ground floor.

The testimony is in conflict as to what type of indicator light was used and whether it would be lit when the elevator was on the ground floor.

The testimony was also in conflict as to the type of night light burning in the lobby. Plaintiff testified that:

> When I walked in there [the lobby], there was one light on in the lobby. That was at the front

71

of the lobby, about twelve feet in . . . . The light was in the ceiling, about fifteen feet high.

It was a fluorescent light. It was rather dim.

Paul McClosky, who had been employed by the defendant at the building in question for fifteen years, testified that:

As to what lights were lit after the building was closed, the 8-foot fluorescent lights directly in front of both elevators were lit at all times during the night. After six, there was no other light in the lobby except the 8-foot fluorescent lights. The ceiling was ten feet high. The . . . light was about five feet from the elevator doors, I imagine.

George Jones, who had worked for the defendant for eighteen years, stated that:

Yes, there was such a thing as a night light. In the lobby, that consisted of two fluorescent light tubes. They were located up in the ceiling, in front of the elevators. The lights were something like eleven feet from the floor . . . .

In addition, Louis Capron testified and stated that he was employed by the defendant until 1964; that at the time of the accident he managed the building in question for the defendant; and that:

As to what you would see if you looked into this elevator shaft through this window when the light in the elevator was out, you would see nothing.

Unless you have very strong eyes, it would be black.

On recross-examination the witness stated that:

I was not speaking about with the door open. If you open the door, it would be quite a different question. Then you get a reflection.

The witness did not state that, as a result of the reflection, the plaintiff would have been able to ascertain whether the elevator was at the lobby floor. Nor was any other evidence adduced to that effect or to contradict the testimony of Capron that if one looked through the window in the elevator door he would only see darkness.

Defendant first contends that the court erred in denying its motion for judgment notwithstanding the verdict since the evidence shows that the plaintiff was guilty of contributory negligence as a matter of law. In Jolliffe v. Miller, 126 App Div 763, 111 NYS 406,[1] the plaintiff was injured when he fell into the elevator shaft after walking through the open elevator door. The evidence in that case revealed that the plaintiff had been a tenant in the defendant's building for two years; that as plaintiff approached the elevator on the first floor the door thereto was open and the operator was standing nearby; that plaintiff had never seen the door open if the elevator was not there and that the door was always open when the operator was standing nearby. The plaintiff in that case admitted not only that he did not look to ascertain whether the elevator was at the first floor but also "that if the car had been there at the time he was hurt and he had looked before he stepped in, with the condition of light the way it was, he would have been able to see the car. . . ." Relying upon his past experience, plaintiff assumed that the elevator was at the first floor and walked straight in but, since the elevator was at a higher floor, he fell into the shaft and was injured. The court held that the question of whether plaintiff was contributorily negligent was for the jury, stating that the open door and the elevator operator standing nearby together consti-

---

[1] Affirmed in a memorandum opinion at 196 NY 504, 89 NE 1102.

tuted such an invitation to enter that plaintiff was lulled into security.

In Tippecanoe Loan & Trust Co. v. Jester, 180 Ind 357, 101 NE 915, the defendant was negligent in failing to repair a catch which would hold the first floor elevator door closed when the elevator was at another floor. It was the custom, of which plaintiff was aware, that the door was closed when the elevator was at another floor. The hallway which led to the elevator was "somewhat dark" and plaintiff, seeing the elevator door to be open, did not look to see if the elevator was at the first floor but relied upon the aforesaid custom and stepped in and fell to the bottom of the shaft. The court reversed a judgment for the plaintiff and remanded the cause for a new trial because of various erroneous instructions which were given to the jury but also stated that since plaintiff relied upon the aforesaid custom in entering the elevator it was a question for the jury as to whether he was guilty of contributory negligence.

In Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 26 NW2d 429, the shaft of an antiquated elevator was guarded only by a gate which had the appearance of slats of wood on which was posted a sign reading: "This gate must not be left open." Plaintiff was collecting the garbage and, after talking to someone, turned around and noticed that the gate was raised, simultaneously stepped in and fell to the bottom of the shaft. There was no evidence that the area in front of the elevator was well lighted but there was evidence that the floor of the elevator was dark and dirty. While the evidence also revealed that the plaintiff knew that the gate could be open when the elevator was at another floor, the court pointed out that the plaintiff testified that in the thirty-seven months he had used the elevator he had never known the gate to be open when the elevator was not at that floor. The court, stating that it was quite immaterial that other persons had a contrary experience, held that

74

the question of contributory negligence was for the jury to determine.

■ The conclusion to be drawn from the aforesaid cases is that if the evidence showed that the plaintiffs therein, relying upon custom and past experience, had reasonable grounds to believe that the elevator was at the floor of their proposed entry, and they did not look to ascertain whether the elevator was actually there, the question as to whether they were guilty of contributory negligence was for the jury to resolve. A motion for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to support the verdict of the jury. In the instant case defendant adduced no evidence that the lighting in the hallway was sufficient to enable the plaintiff to have determined whether the elevator was at the first floor. Moreover, there is evidence from which the jury could have concluded that plaintiff relied upon the absence of an indicator light for assurance that the elevator was at the first floor.

Defendant cites numerous cases in support of his position, all of which are distinguishable from the instant case.[2] While in all of those cases the plaintiffs fell into

[2] The cases cited by the defendant are: Johnson v. Vass, 32 Ill App2d 113, 177 NE2d 28; Johnson v. Citizens Nat. Bank of Norwalk, 152 Ohio St 477, 90 NE2d 145; Bridges v. Hillman, 249 Minn 451, 82 NW2d 615; Senseney v. Landay Real Estate Co., 345 Mo 128, 131 SW2d 595; Waldrup v. Carver, 240 NC 649, 83 SE2d 663; Browne v. Sieger, Cooper & Co., 191 Ill 226, 60 NE 815; Blankertz v. Mack & Co., 263 Mich 527, 248 NW 889; Michaels v. McCarthy, 341 Mass 159, 167 NE2d 633; Jones v. Wood (Mass), 115 NE2d 367 (1953); O'Dell v. Dean, 356 Mo 861, 204 SW2d 248; Selby v. McWilliams Realty Corp., 246 Miss 568, 151 So2d 596; Darrow v. The Fair, 118 Ill App 665; Gorbulove v. Buttnick, 39 Wash2d 266, 235 P2d 158; Cox v. Bondurant, 220 Mo App 948, 7 SW2d 403.

elevator shafts and were injured, in none of them did the plaintiffs contend that they relied upon the existence of custom and past experience which would positively indicate that the elevator was at the floor of their purported entry. Moreover, in Johnson v. Vass, 32 Ill App 2d 113, 177 NE2d 28, the plaintiff testified that he looked to see if the elevator was there, thought it was, but was mistaken (apparently, had he looked with sufficient care he would have been able to determine that the elevator was at another floor); in Johnson v. Citizens Nat. Bank of Norwalk, 152 Ohio St 477, 90 NE2d 145, the plaintiff not only was mistaken about the location of the elevator when he thought he saw it at the floor of his purported entry, but he also made no effort to turn on a light which was located directly in front of the elevator; in Bridges v. Hillman, 82 NW2d 615 (Minn), where the facts were substantially similar to those of the Citizens Nat. Bank of Norwalk case, supra, the court stated at page 618:

> The ready availability of a light, providing a safe course of action, was a decisive factor in support of the holding of contributory negligence in Johnson v. Citizens Nat. Bank . . . .

The plaintiff in Senseney v. Landay Real Estate Co., 345 Mo 128, 131 SW2d 595, opened the elevator door with a key similar to that of the instant case as he had done in the past. While he argued that the presence of the key was the "legal equivalent of assurance that the elevator was at the lobby landing, and an invitation to enter the shaft," the court pointed out at page 598 that:

> It was obvious to anyone who ever used this key that it was not the only existing instrumentality with which it was possible to open the door.

In Jones v. Wood (Mass), 115 NE2d 367 (1953), a protective gate in front of the elevator shaft was not com-

pletely closed and the plaintiff, believing that the elevator was therefore at the floor of his entry, stepped in and fell to the bottom of the shaft. The court stated at pages 369, 370:

> In general, it may be said that he had a right to rely to some extent upon the expectation that the gate would be in its protective position if the elevator was not at the street floor [the floor of the purported entry] . . . . But in the circumstances known to the plaintiff, he could not so rely. He had been told by truck drivers that the gate did not at times "work freely and perfectly."

In O'Dell v. Dean, 356 Mo 861, 204 SW2d 248 the plaintiff walked through an open elevator door but the elevator was at another floor. He testified that even though the lobby was dark he made no effort to turn on the lights; and that he looked through the opening and thought the elevator was there. While the plaintiff also testified that he had never found the door to be open when the elevator was at another floor, the court pointed out that the plaintiff knew the elevator door was worn and if slammed too hard would bounce open regardless of the floor on which the elevator was located.

▌ As a general rule, the issue or issues of negligence and contributory negligence are to be determined by the jury and should not be disposed of by the court in a peremptory manner. Kennedy v. Swift & Co., 234 Ill 606, 85 NE 287. We find that whether under all the circumstances of this case plaintiff was guilty of contributory negligence was properly a question of fact for the jury.

▌▌ Defendant next contends that at the time of the accident plaintiff was not a passenger on the elevator and therefore the court's instruction to the jury that defendant owed a duty to the plaintiff to exercise the highest degree of care was prejudicial error. While there

is no question but that the operator of a passenger elevator is a common carrier and owes a duty to its passengers to exercise the highest degree of care (Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520; Hartford Deposit Co. v. Sollitt, 172 Ill 222, 50 NE 178) we are apprised of no cases which specifically discuss the issue as to whether a person under circumstances similar to those of the instant case was considered to have been a passenger on the elevator. In B. Shoninger Co. v. Mann, 219 Ill 242, 76 NE 354, and Lotspiech v. Continental Illinois Nat. Bank & Trust Co., 316 Ill App 482, 45 NE2d 530, where the plaintiffs therein fell into empty elevator shafts, the courts in both cases held that only a reasonable degree of care was owed to the plaintiffs. While those cases are distinguishable from the instant case in that there is no indication that either of the aforesaid plaintiffs proceeded under the theory that they were passengers on the respective elevators, we believe that the principle enunciated therein as to the duty owed to the plaintiffs is applicable to the instant case. Since the injury to the plaintiff was not caused by the elevator itself, but merely by the absence thereof, we cannot say that the plaintiff was a passenger thereon to whom a duty was owed to exercise the highest degree of care.

█ Plaintiff cites various authorities which hold that the duty to exercise the highest degree of care is not confined to instances where injuries were received only while riding on a conveyance but is also owed to persons boarding upon or alighting from the carrier. However, those cases are inapposite since in the case at bar the plaintiff was boarding only what he thought to be an elevator, not the elevator itself. Plaintiff further argues that Lake St. El. R. Co. v. Burgess, 200 Ill 628, 66 NE 215, is closely analogous to the instant case. In that case the plaintiff had been standing on the defendant railroad's platform when the defendant's train,

which consisted of two connected cars, approached and stopped. Due to the darkness on the platform the plaintiff, in attempting to board the train, stepped into the open space between the cars thinking that it was the train platform and was injured. While the court held that the plaintiff was a passenger and was owed the duty of the highest degree of care, that case is readily distinguishable from the instant case. The plaintiff in that case had been a passenger on the defendant's shuttle train which went only as far as the platform on which she was standing, at which point passengers had to transfer to a train on the defendant's main line. The court pointed out at page 631 that:

> The evidence shows that this island platform, on which appellee was placed by appellant to take a connecting car, was thirty-five feet above the ground, with trains running on either side, and that she was placed there by appellant knowing that she would take a connecting line on its own system within a short time.

In that case the defendant had already accepted the plaintiff as a passenger and this "stopover" was merely a temporary interruption of a continuous journey. In the instant case, however, the plaintiff was not in the midst of a continuous journey on the defendant's conveyances and therefore the carrier-passenger relationship had not previously attached. In situations where the alleged negligence involves something less than the augmentation of the peril to which persons riding in conveyances are exposed, the carrier is held to the duty of exercising only ordinary or reasonable care for the safety of its passengers. Endres v. International R. Co., 129 App Div 785, 114 NYS 631.

We find that the plaintiff was not a "passenger" on the elevator when the accident occurred; that plaintiff, being an employee of a tenant of the building managed

by the defendant and in the building for the purpose of completing some work, was an invitee to whom defendant owed the duty to exercise a reasonable degree of care. Therefore the court's instruction to the jury that the defendant owed to the plaintiff a duty to exercise the highest degree of care was prejudicial error.

██ Defendant's final contention is that the court erroneously and prejudicially instructed the jury that an ordinance which was not in force as to the defendant at the time of the accident could be considered as giving rise to a standard of care.[3] The ordinance, with which the defendant had not complied at the time of the accident, was passed by the City Council of Chicago on July 16, 1952, but did not become effective as to existing structures until July 1, 1954, which was over six months after the accident. It required the installation of a "car-parking device" on all elevators which would prevent the first floor elevator door from being opened while the car was at another floor unless two keys were used. Plaintiff relies upon Edmonds, Inc. v. Vojka, 332 F2d 309 (App DC 1964) in which is stated the principle that a statute in effect as to one class of persons is admissible as evidence in an action against one of another class, to whom the statute by its terms is inapplicable and who had not complied therewith, to indicate a standard of accepted practice. However, that case is inapposite to the instant case and therefore we find it

---

[3] The instruction provided in relevant part as follows:

Since this ordinance did not require compliance until July 1, 1954, the plaintiff is not claiming that the defendants violated the ordinance. However, you may consider this ordinance as a standard of accepted elevator operation and maintenance in deciding whether the defendants exercised the highest degree of care in the operation and maintenance of the elevator in question. You may not consider that the nonconformance with the standard of the ordinance is evidence of an ordinance violation.

unnecessary to express our opinion as the propriety of that principle. The defendant in that case, while excluded from coverage under the relevant statute, was afforded a reasonable opportunity to become aware of the existence of a statutory custom and to comply therewith. In the instant case, however, the defendant was not excluded from coverage under the ordinance but rather was specifically allowed two years to comply therewith. Moreover, plaintiff does not contend that the requirements of the aforesaid ordinance merely constitute a codification of an existing custom.

Therefore, prior to the expiration of the aforesaid two year period, there was no standard of accepted practice with which the defendant was required to comply in any respect.

Darling v. Charleston Community Memorial Hospital, 50 Ill App2d 253, 200 NE2d 149,[4] relied upon by the plaintiff, is also distinguishable from and inapposite to the instant case. In that case the court held that the trial court properly allowed to be introduced into evidence the Standards for Hospital Accreditation of the American Hospital Association, state licensing regulations and the defendant's bylaws as indicating the responsibilities which the medical profession and other responsible authorities regarded as both desirable and feasible for a hospital to assume. The defendant in that case was an accredited member of the aforesaid association and therefore was bound to conform to those standards in order to retain its accreditation; and, as a requisite to continuing in operation, the defendant was bound to conform with the state regulations and its own bylaws. Thus, the standards which were introduced into evidence were not only in full force and effect at the time of the injury to the plaintiff but were also applicable to and governing the defendant. In the instant

---

[4] Affirmed in 33 Ill2d 326, 211 NE2d 253.

81

case, however, the ordinance did not apply to or govern the defendant at the time of the accident since the effectiveness thereof as to this defendant was delayed by the proper legislative authority.

Plaintiff also relies upon Prosser, Torts § 35 (3rd ed 1964), which provides as follows:

> [W]here the statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. There is, in other words, a statutory custom, which is entitled to admission as evidence.

We cannot say that a reasonable man would be expected to comply with the ordinance in the instant case immediately after its passage or at any time prior to the time specifically allowed for compliance.

Moreover, the instruction sets forth that the duty owed to the plaintiff was "the highest degree of care" which, as we have heretofore ruled, is prejudicial error.

Therefore the trial court committed prejudicial error in giving the instruction in question.

We find that, because of the aforesaid prejudicial errors, the defendant did not receive a fair trial. Therefore the judgment of the trial court is reversed and the cause remanded for a new trial in a manner not inconsistent with the views expressed in this opinion.

Reversed and remanded.

McCORMICK, J., concurs.

ENGLISH, J., dissenting.

Regardless of plaintiff's understanding (obviously mistaken) that when the indicator light was out the

elevator cab would be at the lobby floor, it was nevertheless his duty to exercise ordinary care in opening the door and entering the elevator shaft.

Plaintiff testified that at the time in question he was returning from a company Christmas party; that he did not know whether the elevator was present at the lobby floor; that he knew the elevator was quite frequently used after hours by "the people at the Pierce Electric Company" on another upper floor; that he did not look through the window of the elevator door [1] to see if the elevator cab was there; that upon opening the door he did not look to see if the elevator cab was there. He also testified that he did not feel with his hand or foot or do anything by way of testing to see if the elevator was there; that he had never done that. Nor did he attempt, before entering, to turn on the elevator cab light, the switch for which was on the inside of the front side of the cab about 30 inches from the door. (Plaintiff also testified that on prior occasions after business hours this light inside the elevator had never been on, and that he would always turn it on.) The testimony of plaintiff shows that he simply inserted the "key" into the half-inch (or smaller) hole in the elevator door, slid the door open, and, while facing and looking "straight ahead," stepped forward into darkness, and fell down the elevator shaft.

I am not impressed by the fact that on this occasion plaintiff may have followed the same routine he had employed hundreds of times before without injury. There is no prescriptive right in negligent conduct, and the standard of ordinary care was still applicable at the time of plaintiff's injury. Surely, if plaintiff, relying as he claims he was on his past experience, had entered the elevator shaft with his eyes closed, it could not reason-

---

[1] The bottom of the window was 58 inches above the lobby floor.

83

ably be said that he was exercising due care. I see no essential difference between the facts of such a hypothesis and those of the instant case.

In my opinion the acts of plaintiff, taken in the light most favorable to him, constitute a clear case of contributory negligence as a matter of law.

As to the authorities relied on by the majority, I do not consider the 1908 New York decision to be in point, nor greatly persuasive. More or less the same may be said of the 1913 Indiana case and the more recent Iowa decision. In all three of these cases the elevator doors were standing open and this fact was held to be the equivalent of an invitation to enter. As stated by the Iowa court:

> Another fact which courts have uniformly construed favorably to plaintiff on the issue of contributory negligence in cases of this kind is that the door of the elevator was open. It has been considered as an important factor in the affirmance of judgments for plaintiff and of requiring a submission of plaintiff's negligence to the jury. *A closed or partly closed elevator door is construed as a warning or a notice to investigate.* But an open elevator door is uniformly regarded as an invitation to enter. (Emphasis supplied.) Hull v. Bishop-Stoddard Cafeteria (Iowa), 26 NW2d 429, 450 (1947).

On the other hand, I do consider the opinion in Johnson v. Vass, 32 Ill App2d 113, 177 NE2d 28, to be remarkably close to the facts of the instant case and very persuasive in its treatment of the whole subject matter and in the numerous authorities cited.

I agree with the majority that the judgment in favor of plaintiff should be reversed, but, rather than remand the case for a new trial, I would enter judgment here in favor of defendant.