**Harry C. Johnson, Plaintiff-Appellant, v. Michael M. Vass and Magda Vass, Appellees.**

**Gen. No. 11,504.**

Second District, First Division.
September 12, 1961.

Miller, Thomas, Hickey & Collins, of Rockford, for appellant.

Hyer, Gill & Brown, and John S. Ghent, of Rockford, for appellee.

DOVE, J.

On December 2, 1957 Harry C. Johnson and Michael M. Vass executed a written instrument by the provisions of which Vass rented to Johnson the east half of the north half of the second floor of a three story building on East State Street in Rockford, Illinois with right of "access to the elevator on the first and second floors." The stipulated monthly rent was $90 but the agreement provided that in the event Johnson decided to use the entire second floor, the rent would be increased to $125 per month.

Mr. Vass is a book binder and carried on his business on the first and third floors of this building and Mr. Johnson conducted his printing business in the area which he leased on the second floor. On November 12, 1958. Mr. Vass wrote Mr. Johnson calling his attention to the fact that Johnson was using some of the unleased space on the second floor and proposed an increased rental. In this letter Mr. Vass said that because of higher taxes, higher water rates, higher cost of roof repairs, elevator maintenance and other costs, he could not afford to provide additional floor space without additional compensation.

An electric freight elevator served the three floors of this building which Johnson and his employees had the privilege of using. It consisted of a cage with a wooden floor. An overhead light bulb, operated by a pull-type chain, hung down from the top of the cage. The light worked properly when the premises were first rented by the plaintiff but for several months prior to December 23, 1958, the light was inoperative. The cage had no door of any kind but there was a safety gate on the second floor about six inches from the elevator shaft opening which opened and closed vertically. When the elevator was not at the second floor this gate automatically closed. In October, 1958 the owners of the property had installed upon the sec-

114

ond floor about nine inches "ahead of the safety gate" two masonite or plywood swinging doors so constructed that they had to be opened in order to enter the elevator or elevator shaft. The elevator was equipped with locking and stopping devices and when it reached the floor level and the operator stopped it then in order to lock it in place it was necessary to turn a switch.

On December 23, 1958, Johnson arrived at his place of business about 8:30 a. m. An hour later he went to the first floor and returned to the second floor on the elevator with some materials from the Vass Bindery. When the elevator reached the second floor he stopped it and left the elevator with the materials in his charge intending to return to the elevator with a truck of materials from his printing establishment which were to be delivered to the bindery on the first floor.

Mr. Johnson was the only occurrence witness and as abstracted by his counsel, testified: "On the morning of the accident I used the elevator about nine-thirty. I went downstairs, got the work and brought it to the second floor. I had another skid load of work going back down to the first floor. I left the elevator on the second floor. The swinging gates were slightly ajar. The telephone rang. I went into the office and proceeded to take the elevator to go back down to the first floor. I had some printed material that was to go down to Mr. Vass' bindery. This printed material was on a truck mounted on wheels. When I went down to the bindery the first time, I talked to both Mr. Vass and Mr. Matthews, his foreman, and told them that I was bringing material up and down. I left the truck about two feet from the elevator shaft when the phone rang. I answered the phone, opened the elevator doors, and proceeded to pull the load to the elevator. The floor has steel serrations running crosswise, and

115

you must give whatever you are pulling a tug to get it started. When I opened the doors, I looked at the elevator shaft. The elevator seemed to be there. It was dark inside. There was nothing unusual about it being dark inside as it is usually dark there. On certain days when the elevator is on the second floor, it is dark inside the shaft. At no time did Mr. Vass or any of his employees tell me that the elevator had been moved from the second floor. I could not hear the elevator move from where I was making my phone call. I fell to the bottom of the elevator shaft, about 20 feet." Mr. Johnson further testified that the cart, truck or skid, as loaded, which he intended to pull on the elevator weighed 400 pounds and may have been parked a distance of 10 feet from the elevator shaft when he went to his office on the second floor to answer the telephone; that he was on the telephone three to five minutes and when he returned to his cart or skid, the swinging doors were ajar "about the same as I left them. I reached behind me, opened the swinging doors and proceeded to back into the elevator. I was walking sideways, not backing in." He was then asked, "Now when you walked out of the elevator did you lock the elevator on the second floor?" The witness answered: "I'm not sure." He was then asked: "You do not remember whether you locked the elevator at the second floor or whether you didn't?" And the witness answered: "That is right."

During the interval after Mr. Johnson left the elevator at the second floor and his falling into the elevator shaft, the elevator, in response to lifting the cable by Jack Matthews, an employee of Mr. Vass, who was then on the first floor of the building, returned to the first floor where Matthews and Bob Dix, another employee of Vass got on the elevator and it proceeded to the third floor. Mr. Matthews testified he remained on the third floor 3 or 4 minutes rolling a steel wheeled

116

truck over the floor and was on the elevator starting down and between the second and third floors at the time Mr. Johnson fell.

On March 30, 1960 the instant complaint was filed in the circuit court of Winnebago County by Harry C. Johnson to recover from Michael M. Vass and Magda Vass, the owners of the building, damages for the injuries he sustained as a result of this fall. The issues made by the pleadings were submitted to a jury resulting in a verdict in favor of the plaintiff for $10,000. The trial court determined, as a matter of law, that plaintiff was guilty of contributory negligence which precluded his recovery and therefore granted defendants post-trial motion and entered judgment notwithstanding the verdict in favor of the defendants in bar of the action. In the alternative, the court granted the defendants a new trial. The propriety of the ruling of the trial court in granting a new trial is not challenged.

■ The issue of contributory negligence is ordinarily and preeminently a question of fact upon which a plaintiff is entitled to have a finding of a jury. It becomes a question of law only when all reasonable minds, in the exercise of fair and honest judgment would, upon the undisputed facts, be compelled to reach the conclusion that such facts do not establish due care and caution on the part of the plaintiff. (Davis v. Springfield Lodge No. 158, Benevolent & Protective Order of Elks, 24 Ill App2d 102, 106, 164 NE2d 243.)

In the Davis Case, supra, a judgment in favor of the plaintiff, who sustained injuries when he tripped and fell over a bench or bar bell in the physical therapy room of the Elks Club at Springfield was sustained. The record disclosed that plaintiff was familiar with the quarters of the lodge and had been a member for many years. Upon the afternoon in

117

question, he had been playing cards in the card room and decided to go to the toilet. In order to get to the toilet, which was located in the locker room, he left the card room, walked through the reading room, turned to the right and walked to the door of the physical therapy room intending to pass through it and enter the adjoining locker room. The door to the physical therapy room was not locked. He opened the door and found the room completely dark. In feeling around for the light switch he either fell over a bar bell or a bench which had been placed across the aisle through which a person would walk in going through the therapy room to the locker room.

In affirming a judgment for the plaintiff the court said: (24 Ill App2d 102, 106, 107, 164 NE2d 243) "We do not think it was negligence per se for plaintiff to enter the unlighted therapy room and attempt to locate the light switch on the wall. He was familiar with the club premises and knew there were toilet facilities in the men's room at the rear of the locker room; he knew that members using this room entered the physical therapy room and that they followed a path or aisle through the bar bells, mats and other paraphernalia across the therapy room to the locker room door; that this door led not only to toilet facilities but also the steam room, showers and swimming pool. The door to the therapy room was not locked and there was nothing to indicate to plaintiff or any other club member that the locker room should not be used. That members were going to the locker room through the therapy room on the night of the accident is indicated by the fact that McKinney, a member, was entering the therapy room on his way to the locker room to take a steam bath when he discovered the injured plaintiff. Under these circumstances it is evident that plaintiff in entering the dark therapy room did not knowingly expose himself to danger.

The evidence affords no reasonable basis for concluding that plaintiff knew or had any way of knowing of any dangerous condition existing in the therapy room. There is no evidence that after discovering that the therapy room was in darkness that he did anything except to reach for a light switch. In judging plaintiff's conduct, it must be remembered that he was proceeding in familiar surroundings. When a person under such circumstances opens a door to find the room beyond in darkness, it would seem both natural and reasonable for him to reach for the light switch. He appears to have done only that which experience and observation tells us the ordinary prudent person does when acting under similar circumstances in his own home or other places with which he is familiar."

B. Shoninger Company v. Mann, 219 Ill 242, 76 NE 354 is also cited and relied upon by appellant. The plaintiff in that case was an errand boy, sixteen years of age employed by Messrs. Thompson and Thomas who were sub-tenants of the defendant, who was in possession of a four story building which he, the defendant, had leased from the owner. During the course of his employment the plaintiff fell into a freight elevator shaft located near a rear entrance to the building. The court stated that the evidence disclosed that plaintiff had been in the employ of Thompson and Thomas for two or three weeks before the injury, had only been in the elevator two or three times and was not familiar with its surroundings or with that portion of the building where the elevator was located; that the elevator was not well lighted; that plaintiff did not know that the elevator had been taken to an upper floor; did not know that the shaft had been left open and unguarded and that plaintiff did not walk into the open elevator shaft but slipped and fell. Under these facts the court held that the question of contributory negligence was properly submitted to the jury.

119

In Pauckner v. Wakem, 231 Ill 276, 83 NE 202, also cited and relied upon by appellant, it appeared that plaintiff was lawfully upon the premises of the defendants as an invitee and fell into an unprotected elevator shaft and was injured while passing along a narrow aisle or passageway in defendants' warehouse. It was contended by defendants that plaintiff was guilty of contributory negligence and counsel argued that if the light in the passageway was sufficient to enable the plaintiff to see the elevator shaft he should have used his eyes and avoided the danger or if it was too dark for him to see he should not have gone along an unknown passageway without a light. In answer to this argument the court said that the evidence was that the plaintiff was unacquainted with the room; that the interior of the building was but dimly lighted; that the entrance to the elevator shaft was unguarded and the light around the shaft very dim and held that under all the evidence it was for the jury to determine whether plaintiff was guilty of contributory negligence.

What the court held in the Davis case, supra, was that the plaintiff did not knowingly expose himself to danger in the dark therapy room. In the Mann case the evidence disclosed that the plaintiff was not familiar with the elevator or its surroundings and that he slipped and fell into the open unprotected elevator shaft. In the Pauckner case plaintiff was unacquainted with the premises. We have read and considered the other cases from this jurisdiction called to our attention by counsel for appellant. The controlling facts in none of them are analogous to the facts in the instant case. Here the plaintiff testified that the first floor was dark; that the second floor "could stand a light" but was all right. It clearly appears that upon the morning of this occurrence there was sufficient light to operate the elevator; that plain-

120

tiff was familiar with the location of the elevator shaft and its surroundings, had frequently operated the elevator, knew the condition of its equipment and its locking and stopping devices. Plaintiff testified that the locking device worked "after a fashion," but did not hold the elevator at floor level; that if not locked it was subject to be moved; that he did not remember whether he did lock it or did not lock it when he walked off the elevator platform at the second floor just before he went to this office to answer the telephone call.

In 18 Am Jur Elevators and Escalators, sec 51, p 549, it is said that it is elementary that every person when in proximity to an elevator shaft, the existence of which he knows is bound to use reasonable care for his own safety. It is often, continues the author, very difficult to determine whether a person who falls down an elevator shaft is guilty of contributory negligence. If the elevator is one serving several floors in a busy building and the passenger had previously used it, subsequently returning to the shaft to use it again, he should know, as a person of ordinary prudence, that the elevator may not have remained where he left it, and he cannot safely assume, without any sort of promise or assurance that it will still be there, so that if he walks backwards while carrying something without looking, and is injured in the shaft, he is guilty of contributory negligence. (Keeter v. Devoe and Raynolds, 338 Mo 978, 93 SW2d 677.)

In Johnson v. Citizens National Bank, 152 Ohio St 477, 90 NE2d 145, 34 ALR2d 1361 it appeared that the plaintiff, a tenant of an office building, unlocked and opened an elevator door knowing there was an elevator shaft beyond the door, that he looked and thought he saw the elevator floor but was mistaken as the elevator was not there and as a consequence he fell to the bottom of the shaft. In front of the eleva-

121

tor was a light with a pull cord but plaintiff made no effort to turn on the light. Under these circumstances the court held that the plaintiff failed to exercise due care for his own safety and the trial court should have directed a verdict in favor of the defendant. Following the report of this case in 34 ALR2d 1361 is an exhaustive annotation having to do with the contributory negligence of one stepping or falling into a shaft of non-automatic elevators. This annotation includes, however, cases involving elevators which require the person desiring to use the elevator to pull a cable in order to bring it to the desired floor.

Bridges v. Hillman, a Minnesota case, reported in 82 NW2d 615, was an action to recover damages for injuries sustained by plaintiff in a fall, down an elevator shaft. It appeared that the plaintiff was an employee of Porter Electric Company who occupied, as lessee, a building in Minneapolis, owned by defendant, Hillman. In reversing a judgment for the plaintiff the Supreme Court of Minnesota said: "Here we have a situation where the plaintiff was familiar with the building and with the features and operation of the elevator. He knew that the slatted gate's being down did not signify the whereabouts of the elevator. He knew of at least two other employees who were in the building, and the evidence does not establish that he knew of their whereabouts at all times so that he could believe that they had not used the elevator or that the elevator must be where he had left it. Also, we are compelled to infer, that plaintiff knew that others had keys to the building and that it was possible for someone to have entered the building and used the elevator in his absence. He knew that as he approached the elevator the light was very dim, and his testimony shows that the circumstances were such that he could not and did not feel positive the elevator was there. He 'thought' he saw it, yet he did not turn

122

on the light immediately in front of the elevator. Further, on thinking that he saw the elevator as he approached, although aware of the very dim light, he did not look again, or take any other precautionary measure after raising the gate and before stepping forward into the shaft. We believe that all reasonable men must conclude on these facts that plaintiff did not exercise that degree of care for his safety which the law requires."

In Jones v. Wood, a Massachusetts case reported in 115 NE2d 367, it appeared that the defendants were owners of a four story building and plaintiff was an employee of a tenant of a portion of the third floor. The plaintiff was injured when he stepped into an open freight elevator shaft through a doorway leading off a common passageway on the first floor. The record disclosed that plaintiff had made daily use of the elevator for a period of six months; that there were no lights burning in the elevator shaft or the passageway; that there was a metal safety gate which operated automatically and when in proper working order, this safety gate was in a raised position about six feet above the first floor level when the elevator was at that floor but formed a barrier to the shaft at other times. When plaintiff fell, the gate was not in proper working order and was in a raised position altho the elevator was not at the first floor level. The plaintiff testified that before he stepped into the elevator shaft he looked; that it was pitch dark and he could not see a thing; that he had been aware for three or four weeks that the safety gate "was in bad condition" and that sometimes it would work freely and perfectly and at other times it would not. In holding that plaintiff's own conduct prevented a recovery the court said that plaintiff had a right to rely, to some extent, upon the expectation that the gate would be in a protective position if the elevator

123

was not at the street floor but under the circumstances, shown by the evidence and known to the plaintiff he could not so rely because he had been aware that the gate was in bad condition. "He also must have been aware" continued the court, "that he did not have the benefit of light from the bulb at the top of the elevator, a circumstance which might indicate that the elevator was not at the street floor. For the plaintiff while holding a large package before him, to ascertain that the gate was not down and to step through the partly open fire doors into a place of utter darkness requires a finding that he was negligent."

In the instant case plaintiff was not misled by anything or anybody. He did not slip or fall over an obstruction which he had no reason to anticipate. He was not attempting to locate any switch or light. He knew the exact location of the elevator shaft and was familiar with its equipment and with its surroundings. He knew that it was possible for some one else to have the elevator on another floor and that it was subject to be moved and the hazard presented by the unprotected shaft if it was moved. His failure to guard against this possibility is contributory negligence. (Gorbulove v. Buttnick (Washington) 235 P2d 158). He testified that before he stepped into the shaft he looked and thought he saw the elevator. He was mistaken because at that time the elevator was at the third floor.

In Munsen v. Illinois Northern Utilities Co., 258 Ill App 438, at page 446 it is stated that where a plaintiff is thoroughly familiar with a possible hazard involved in the performance of his work and familiar with the means to avoid such hazard, the fact that at a particular time he may have been momentarily unmindful thereof, forgetful thereof, or have overlooked the same, does not absolve him from the duty of observing due care for his own safety.

Experience and observation tells us that plaintiff here did not do that which an ordinary, prudent, person would have done when acting under similar circumstances in a place with which he was completely familiar. Plaintiff, himself, recognized that he had not, because, immediately after he fell and while at the bottom of the shaft he said to Mr. Vass: "Don't worry Mike, it isn't your fault, its all my fault."

The trial court did not err in sustaining appellees post-trial motion and rendering the judgment appealed from and that judgment is affirmed.

Judgment affirmed.

SMITH, P. J. and McNEAL, J., concur.