EUGENE HARRIS, Plaintiff-Appellant, *v.* THE UNION STOCK YARD & TRANSIT COMPANY OF CHICAGO *et al.*, Defendants-Appellees.

(No. 60213;

First District (3rd Division)—June 5, 1975.

Cooney and Stenn, of Chicago (Robert S. Minetz, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (James P. Dorr, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Eugene Harris, commenced this action to recover damages for personal injuries allegedly caused by the negligence of the defendants, The Union Stock Yard & Transit Company of Chicago (Union), Construction Equipment Manufacturing Association (Construction Equipment), Illinois Central Railroad, and The Chicago River & Indiana

Railroad Company. At the close of plaintiff's evidence, upon trial before a jury, the trial court directed a verdict in favor of defendants. Plaintiff appeals from the judgment thereon and the subsequent denial of his motion for a new trial.

On appeal, plaintiff has abandoned his claims against defendants Illinois Central Railroad and The Chicago River & Indiana Railroad Company. The issues presented are whether the trial court erred in directing the verdict for defendants Union and Construction Equipment, and also in excluding certain evidence offered by plaintiff.

Plaintiff, in his brief filed in this court, has waived his claims against the two defendant railroads. A careful scrutiny of the record on appeal discloses that no evidence whatsoever had been presented against defendant Construction Equipment, and that plaintiff has not sustained the burden of proof as to that defendant. Therefore, the judgment of the trial court entered in favor of defendant Construction Equipment is affirmed. Our consideration will accordingly be limited to the evidence presented against the remaining defendant Union.

The essential facts herein are not in dispute. Plaintiff, a millwright employed at the Amphitheatre building, upon leaving the building on February 8, 1969, between 4 and 4:30 P.M., sustained personal injuries when he slipped while climbing over a standing railroad flatcar to go to a parking area for his automobile. Plaintiff and four coworkers testified as to the issue of liability. No evidence was presented by defendant. The testimony of the witnesses is hereinafter summarized.

The area of the occurrence is the Chicago Amphitheatre building, located on the west side of Halsted Street between 42nd and 46th Streets, in Chicago, and the area generally to the west of the building. Immediately west of the building is a fence-enclosed parking lot bounded by the building on the east, and by fences on 42nd Street on the north, by 46th Street on the south, and on the west by a north-and-south fence located immediately east of and parallel to a set of railroad tracks with a spur connection. Gates are located on the north, south and west fences of the parking lot. On the west fence there is a pedestrian gate at approximately 43rd Street, and a larger gate for vehicles approximately 75 feet south. Immediately west of the above railroad tracks is a parking area referred to as the "pig pens" area because of its former use. The plaintiff and his fellow-workers parked their automobiles there on the date of this incident. This area is divided by an east-west roadway which leads into the large or vehicular west gate of the parking lot.

John Schuljak testified that he worked at the Amphitheatre 3 or 4 days prior to the occurrence. On the date of plaintiff's accident the witness attempted to enter the parking lot through the south gate but was

ordered to park in the pig-pen area. He did not notice anything when he walked through the west gate upon arrival, but when he retraced his route after work he encountered a train of cars extending one-quarter mile in each direction from the west gate. He saw plaintiff fall. He always tried to park in the parking lot but was always refused admission.

Delos Miller testified that on February 8, 1969, he went to park in the parking lot but was told at the gate, by a guard in a yellow rain coat (he did not know the guard's name), to park near a fence over by the railroad. He complied, and used the west gate to go to his job in the Amphitheatre. The west gate is approximately one block from the north gate and two blocks from the south gate.

George Ushako, a fellow-carpenter, testified that on the day of plain· tiff's injury he attempted to park in his usual place but "someone" sent him to the parking area behind the railroad. He finally parked near 42nd Street in the pig-pen area. He entered and also left by the north gate at 42nd Street. He did not take the route used by plaintiff to return to the parking area, but walked around the railroad to the north. The train con sisted of 20 flatcars and boxcars.

Frank Maracic, a coworker, testified that prior to parking in the area of the Amphitheatre on the day in question, he had a conversation with an Amphitheatre man at a small security building at the entrance to the parking lot. The man, whom he did not know, would not let any one enter.

Plaintiff testified that on the date of his injury he was a carpenter who had worked for 3 or 4 days for United Exposition at the Amphitheatre. He drove to work daily, and on this day tried to drive into the parking lot through the west entrance. Two men wearing Amphitheatre type uniforms stopped him and told him he could not park in the lot but must park in the pig-pen area. He complied, and took his tools and walked through the west gate to the Amphitheatre. He then noticed the west pedestrian gate was locked. Plaintiff left the job between 4 and 4:25 P.M. to return to his car and encountered a parked train at the west gate which stretched as far as he could see. Other persons were crawling under and over the cars of the train to get to their automobiles. He did not check the west walkway nor the north or south gates, but proceeded to climb over a flatcar directly in front of the large gate. First placing his tool box, which weighed in excess of 90 pounds, on the flatcar, he climbed on the coupling, then onto the bed of the flatcar, picked up the tool box and carried it to the center of the car, and fell as he went to get off the car. The bed of the flatcar was 5½ feet from the ground and was wet and greasy. The weather was damp and wet, and it was turning dark.

The trial court rejected plaintiff's offer of proof that John Schuljak would testify that the parking lot attendants prevented parking in the

lot and informed workers they must park where plaintiff did; that he did not see any men walking to 43rd or 46th Street after work on the day in question; also that Delos Miller would testify that he left work with 10 to 14 others who faced the same obstacle, and that he also had to climb over a flatcar which was wet and covered with grease. Further, the court rejected the offer of proof that Frank Maracic would testify that when he left at 1:30 P.M. he noticed quite a few flatcars blocking the route; he climbed over them and noticed they were damp with snow; and that he would also testify as to the place where workmen always parked, and as to his conversation with the Amphitheatre security people when he attempted to enter the parking lot on the day of the accident.

Plaintiff did allege in his amended complaint that defendants Union and Construction Equipment "owned, operated, controlled and maintained certain premises at or near west 43rd and South Halsted, City of Chicago, and more specifically certain premises on the west side of the amphitheatre, at or near west 43rd and South Halsted in the City of Chicago  *  *  *." In their respective answers to the complaint defendant Construction Equipment denied the allegation, and defendant Union admitted it. During the trial no evidence was presented as to the ownership of the railroad tracks, the train, or the pig-pen area west of the tracks.

## I.

On appeal plaintiff contends that sufficient evidence was presented to establish a prima facie case and that the trial court erred in directing a verdict for defendant contrary to the rule that a directed verdict should be granted only if all the evidence when viewed in its aspect most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504.

## II.

Plaintiff has alleged that defendants owed him a duty to provide a safe means for him to travel from the Amphitheatre to his automobile after completing work on February 8, 1969. Defendant Union agrees that there is a duty to provide an invitee with a reasonably safe means of ingress and egress, both within the premises owned or controlled by the inviter, and, within limitations dictated by the facts of the case, beyond the precise boundaries of the premises. (*Seipp v. Chicago Transit Authority* (1973), 12 Ill.App.3d 852, 858, 299 N.E.2d 330; *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill.App.3d 345, 272 N.E.2d 369; *Cooley v. Makse* (1964), 46 Ill.App.2d 25, 196 N.E.2d 396.) The invitee status

includes persons leaving the premises. (See *McGourty v. Chiapetti* (1962), 38 Ill.App.2d 165, 172, 186 N.E.2d 102.) However, defendant argues that plaintiff failed in all elements of his proof, particularly, that defendant owned and controlled the premises where the injury occurred, that plaintiff was an invitee, that defendant dictated a certain route for egress, that the route was blocked by railroad cars under the express authority of defendant, that there were no other reasonable means of egress than to traverse the railroad cars, and that plaintiff was injured while doing so as a result of defendant's negligence.

■■  Plaintiff contends that defendant Union in its answer admitted ownership of the Amphitheatre and certain areas west of it at the time of the injury to plaintiff, but acknowledges in his brief that the ownership of the premises at the precise point of injury is not clear. Plaintiff argues that the testimony nevertheless indicates that agents of defendant Union and defendant Construction Equipment told plaintiff and others where to park and thereby dictated plaintiff's ingress and egress routes to the Amphitheatre. None of the witnesses knew the alleged guards present on the morning of the occurrence or their relationship to defendants. The testimony at most indicated that unnamed guards, "Amphitheatre men," men wearing Amphitheatre type uniforms, or parking attendants would not permit workers to park in the parking lot and told them to park in the pig-pen area. No directions whatever were given as to the pedestrian route to be followed either to or from the Amphitheatre and the pig-pen area. The evidence was insufficient to prove ownership or control by defendant Union of the premises where plaintiff sustained his injury, or to show that defendant dictated plaintiff's ingress or egress over the specific pedestrian route taken at the time of the injury.

Plaintiff also contends that defendant failed to provide a reasonably safe route for ingress and egress from the premises and also to warn him at a reasonable time of any danger he might encounter on his return to his automobile. Plaintiff argues that agents of defendant instructed him to park in the pig-pen area even though they knew a train would block his path after work; further, that defendant failed to have the train uncoupled at some point in the west gate, and never warned him of the obstruction to be encountered after work.

In *Seipp v. Chicago Transit Authority* the plaintiff sustained personal injuries after leaving defendant's Dempster Street terminal, as she walked along a path, a shortcut to her home. The shortcut path was not on the property owned by the C.T.A. The C.T.A. had provided an illuminated paved path on its property from its terminal to Dempster Street. Plaintiff, however, knowing that the route chosen was a dirt path, covered with snow and containing many ruts, elected to take the shortcut to her home.

The court, in sustaining a directed verdict for defendant, stated the general rule of law applicable to invitees in such situations, and there found that the defendant did not breach its duty of reasonable care. No evidence was introduced that the defendant either prescribed the path as a means of ingress or egress or assumed its use as such at the time of the accident. 12 Ill.App.3d 852, 859.

In *McDonald v. Frontier Lanes, Inc.*, the plaintiff sustained injury when he stepped into a hole in a city-owned parkway across the sidewalk from defendant's parking lot. No precise walkway was designated, and defendant knew that patrons parked in the lot located on the street and often drove across the parkway. Liability was predicated upon defendant's breach of its duty "to provide reasonably safe means of egress from its premises and to give its invitee adequate warning of those dangers known to defendant which were not apparent." 1 Ill.App.3d 345, 353.

In *Cooley v. Makse*, the plaintiff sustained injury when she tripped over a raised portion of the sidewalk while leaving defendants' tavern premises by a walkway which was the only means of ingress and egress. The evidence did not support the allegation that the situs of injury was owned by either the tenant or the owner of the tavern. However, the evidence did establish that the city had an easement where the injury occurred. The condition of the sidewalk was not affirmatively created by the tenant or owner but was caused by a root of a nearby tree. On appeal, a directed verdict for the defendant-owner was reversed, the court holding (46 Ill.App.2d 25, 31): "Having prescribed the route to their invitees for ingress or egress to and from their building, it was their duty to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition."

In *Jones v. Granite City Steel Co.* (1969), 104 Ill.App.2d 379, 244 N.E. 2d 427, the plaintiff sustained injury when leaving her place of employment and walking approximately 50 feet from the customary path she fell into a hole. The court, in holding defendant liable, stated at page 383 that the owner is under a duty to an invitee to provide the latter a reasonably safe means of ingress and egress "even when the route chosen is not the customary one, but is one which is allowed by the owner."

In the instant case plaintiff places great reliance on *Pittsburgh, Fort Wayne & Chicago Ry. Co. v. Callaghan* (1895), 157 Ill. 406, 41 N.E. 909, in support of his freedom from contributory negligence and right to recover. In *Callaghan*, plaintiff recovered damages for personal injuries sustained when struck by a moving boxcar as he was crossing defendant's tracks. He was passing from one of his employer's buildings to another in the course of his employment. The evidence demonstrated that the

route taken by plaintiff was used daily by about 1500 employees as access to and from nearby buildings. An overhead bridge was located one-half block away. The tracks plaintiff crossed were used as a switching area; freight cars would be propelled by an engine, released, switched to intended routes and allowed to travel by their own momentum to the designated area. Plaintiff, aware of the switching operations, looked in both directions before crossing the tracks. Without warning, cars propelled by an engine struck motionless cars which in turn struck plaintiff.

■■ No case cited to this court has a factual situation similar to the one before us. Nevertheless, the general rules of law enunciated therein are clearly applicable. An owner is required to provide his invitee with a reasonably safe means of ingress and egress, both within the confines of the property and upon that controlled by him. (*Seipp v. Chicago Transit Authority.*) However, it is well established that a landowner is not an insurer of the safety of his invitee against any and all hazards which may be found on the owner's property. As stated in *Beccue v. Rockford Park District* (1968), 94 Ill.App.2d 179, 189, 236 N.E.2d 105, where plaintiff hit a tree while using defendant's toboggan slide after it had been closed by the park district:

> "An invitee using the premises for his benefit and that of the owner, must be held to be equally aware of all the obvious and normal hazards which accompany the use being made of the premises. The owner's liability is bottomed on his superior knowledge, presumed or otherwise, of defects in the premises which another is invited to use."

■■ While defendant owed plaintiff a duty to provide a reasonably safe means of ingress and egress, such duty did not require defendant to provide a specific route or the shortest route to the pig-pen area. In the instant case plaintiff encountered a train which obstructed his direct egress through the west gate to his parked car. The evidence disclosed that this was merely the shortest route, that other exits and routes were available and utilized for such purpose. There was no evidence either that the center gate was the only or customary means of ingress or egress for the pig-pen area, or that it was customary for trains to be stationed at the point on the tracks; nor that defendant had any connection with the train, knew of its presence, or knew of any dangerous condition related thereto. Evidence was introduced as to how other workers reacted upon encountering this very train as it blocked the gate on the particular date. No hidden danger or unknown condition was established. Instead, the obstacle and condition caused by the train were apparent and obvious. Plaintiff, an invitee, must be held to be equally aware of all the obvious and normal hazards which his use of the premises involved. Plaintiff has

not sustained proof as to a breach of duty by defendant under the circumstances herein.

Plaintiff contends that he has sustained his burden to establish that he was free from contributory negligence and that the question was one of fact for the jury. Defendant responds that where, as in the instant case, the question of due care on the part of plaintiff rests solely upon his own testimony, and the attendant circumstances are not in dispute, it becomes the duty of the court to determine whether as a matter of law the plaintiff exercised ordinary caution for his own safety. *Day v. Barber-Colman Co.* (1956), 10 Ill.App.2d 494, 511, 135 N.E.2d 231.

Plaintiff encountered and attempted to overcome an obvious and known hazard. The danger inherent in attempting to climb over the flatcar was apparent and not latent. (Compare *McDonald v. Frontier Lanes, Inc., and Seipp v. Chicago Transit Authority.*) Unlike the factual situation of a hidden obstacle in which the plaintiff fell over certain lumber covered by high weeds presented in *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill.2d 153, 125 N.E.2d 47, plaintiff in the instant case did not take the shortest route *which was patently safe.*

The injury sustained by plaintiff was not proximately caused by defendant Union's breach of its duty to plaintiff, but rather by his own conduct. In a case in which the plaintiff sustained injuries when he tripped and fell because of a defective rise in a passageway of defendant's hotel, the court in *Pollard v. Broadway Central Hotel Corp.* (1933), 353 Ill. 312, at 320-21, 187 N.E. 487, observed:

> "Where one suddenly comes upon an unexpected opening in a passageway which he is traveling through at the invitation, either express or implied, on the part of the proprietor of the building, the case is entirely different from one where a person walks directly into an opening, which opening he would have seen for some distance had he looked as he walked, and where ordinary care could not have failed to discern or discover the opening."

In *Ferguson v. Southwestern Bell Telephone Co.* (1972), 8 Ill.App.3d 890, 893, 290 N.E.2d 429, the plaintiff climbed upon the cab of his truck to move an overhead wire which was preventing the truck's ingress to certain premises. He lost his balance when the truck moved forward; he jumped to the ground and sustained injuries. No emergency was involved. Plaintiff was held contributorily negligent as a matter of law in creating the risk by his own actions.

In *Harris v. Midwest Oil Co.* (S.D. 1940), 292 N.W. 397, the plaintiff was found to be contributorily negligent as a matter of law in attempting to negotiate over a tree stump when she tried to take a shortcut instead of using a path. In *Nance Exploration Co. v. Texas Employers' Insurance*

*Ass'n* (Tex. Civ. App. 1957), 305 S.W.2d 621, the plaintiff was also found to be contributorily negligent as a matter of law. There plaintiff, while drilling on the owner's land with a 35-foot-high crane, observed an exposed overhead electrical cable and drove his truck forward without lowering the crane.

In the instant case, the danger was obvious and the mechanism of injury was plaintiff's attempt to clamber over the flatcar while ignoring available alternative routes of known safety. (See *Klimovich v. Crutcher* (1965), 57 Ill.App.2d 444, 206 N.E.2d 723.) The risk here was created by the action of the plaintiff. No emergency was involved. He was not misled by anything or anybody; he did not slip or fall over an obstruction which he had no reason to anticipate. (*Johnson v. Vass* (1961), 32 Ill. App.2d 113, 124, 177 N.E.2d 28.) It was plaintiff's action which was the proximate cause of injury.

■■ Considering all the evidence viewed in its aspect most favorable to the plaintiff, we conclude that such evidence so overwhelmingly favors the defendant that no contrary verdict based on the evidence could ever stand.

### III.

Plaintiff's final contention is that the trial court erred in excluding certain evidence offered by plaintiff. First, he argues that the evidence that agents of defendant instructed numerous workers to park in the pig-pen area was relevant as proof of the apparent control by defendant over all the parking areas west of the Amphitheatre and to show that defendant knew the train was due and the precise route followed by the workers in parking their cars; and that therefore, the failure to notify plaintiff of the train, and directing him to a parking space which would become dangerous, was negligence. Plaintiff admits that most of the evidence was eventually allowed to stand. The offers of proof indicate that at most, the alleged agents of defendant directed workers at the Amphitheatre *not to park* in the parking lot and told them *to park* in the pig-pen area.

■■■ Second, plaintiff argues that testimony that other workers also climbed over the parked train was admissible as proof of the reasonableness of plaintiff's conduct and was improperly excluded. The evidence offered to show what other workers did upon encountering the train of cars on the same date was not, in any event, proper evidence of custom. Plaintiff's reliance on *Franey v. Union Stock Yard & Transit Co.* (1908), 235 Ill. 522, 85 N.E. 750; and *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill.2d 326, 211 N.E.2d 253, is misplaced. There was no evidence introduced to show that the parked train was there on prior occasions or that it was in the nature of a fixed object. Moreover, the mere fact that a course of conduct is common practice does not ipso facto

establish that it is nonnegligent conduct (*Kay v. Ludwick* (1967), 87 Ill. App.2d 114, 119, 230 N.E.2d 494), and a person who chooses a way known to involve certain possible hazards and is injured in the process is contributorily negligent as a matter of law. *Day v. Barber-Colman Co.*, 10 Ill.App.2d 494, 511.

Moreover, plaintiff did successfully introduce testimony as to each of the foregoing, and the additional testimony would have been merely cumulative. A failure to allow such testimony which is merely cumulative is not prejudicial error. *Douglas v. Chicago Transit Authority* (1972), 3 Ill.App.3d 318, 322, 279 N.E.2d 44.

For the above reasons, the trial court did not err in directing a verdict for defendants Union and Construction Equipment and in excluding evidence. Therefore, the judgment of the circuit court is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.